Please be seated. This is PNI Litigation Trust v. National Union Fire Insurance Company and RSUI Indemnity Company. Gregory Schwagman is here for the appellant PNI, Joseph Lang is here for National Union and Sabrina Horan is here for RSUI and Mr. Schwagman you may begin your argument. Good afternoon your honors and may it please the court, Greg Schwagman on behalf of PNI Litigation Trust and although it looks like we lost, we couldn't keep our audience here for coverage dispute, make no mistake this is an important case. National Union, the primary insurer here and its parent AIG provide insurant D and O, director and officer insurance coverage to fiduciaries across the country, to companies across the country and this language is in their standard form contract and your interpretation of that language is going to have potentially significant effects on the rights of these fiduciaries across the country. Now the fundamental question before this court is, do the express terms of the 2017 policy provide coverage for the trustees claims against the 2017 directors based on the express terms of that policy? The policy seems pretty clear, I'm looking at paragraph 7B, it says claims actually first made or deemed first made prior to the inception date of this policy are not covered under this policy. That's right. And then it says any related claim it says shall be deemed have been first made at the time of such previously reported claim was made and this is the exact same scheme as before in the amended complaint, it's the exact same scheme, all you're doing is adding new directors, it seems pretty clear that 7B makes this a claims made policy. Yes, your honor, this is a claims made policy and this is a claims made policy like every other policy that has to be interpreted by its express language. So let me address your first statement first. Claims deemed first made prior to the inception date of this policy are not covered under this policy. I agree that language seems clear, but here's the problem. This statement begs a series of questions that cannot be answered by the express terms of this policy and I'll walk you through them, but those questions are how are claims deemed first made prior to the inception date of this policy? Under the language of this policy? What's the standard? Who does the deeming? How can this possibly be read consistently with the first sentence of 7B? And I'll posit it cannot. So let's look at the first sentence of 7B. First sentence of 7B tells us exactly what the purpose of 7B is and it limits that purpose to a singular thing. It says solely, solely for the purpose of establishing whether any subsequent related, excuse me, solely for the purposes of establishing whether any subsequent related claim was first made during the policy period. It says, so that provision unambiguously defines the purpose of the entire relation back provision, 7B, the entire thing that its purpose is both singular and limited. It can do one thing and only one thing and that thing is to expand coverage. It looks to see if there is a claim made during the policy period and then it says, okay, well, if a claim was made subsequent after the expiration of that policy period and it relates to that claim that was first made during the policy period, then it relates it back. That's all it does. And we can see that if we look to the next clause of, excuse me, the next clause of 7B, which is the rule that lays out how this provision actually works. The rule is set forth in a if-then statement. It first contains a condition preceded to its application. Now, this is the rule that the district court used to exclude our claims from coverage. The first statement is the condition preceded. The condition preceded says, and I'm going to simplify this for clarity, but it says, if during the policy period a claim was first made and reported in accordance with clause A above. Now, the actual language says if in such period, but that such period clearly refers to the immediately preceding language during the policy period. So again, the condition precedent for this rule to apply at all is that a claim had to be first made during the policy period and then reported in accordance with clause 7A, which also requires that the reporting happens during the policy period or the discovery period, which ends shortly thereafter. So there's two indications in the condition precedent that it has to be during the policy period. That's the claim we're talking about. If that's satisfied, then the next portion of the rule comes in. It says, then any related claim that is subsequently made against and insured shall be deemed to have first been made at the time that such previously reported claim was made. That such previously reported claim was made clearly and unambiguously refers to the claim that was identified in the condition precedent to the application of the rule. In the if statement. If the claim was made in the, during the policy period. All of the claims, all of the claims allege that Mariano and the directors breached their with self-dealing. All the claims, that's the exact same scheme as before, isn't it? Well, I disagree with that characterization of the scheme. But to be clear, none of that is relevant if I can get you to agree with me on the interpretation of the express words of 7B. So, my point is, it doesn't matter if any of these claims are related to whatever happened in 2016, whether the trustees claims are related to what happened in 2016, because 7B does not permit claims to be deemed made at any point other than during the policy period. So the question is, was there a claim first made during the policy period? And the answer to that question is clearly yes. Even defendants have to admit this because to the extent they want to rely on the rule to exclude our claims from coverage, there has to have been a claim first made during the policy period. And of course there were. There were new things that happened in 2017. New transactions that had not occurred until 2017. New directors that were involved in those transactions that had not occurred in 2017 and new demands for monetary relief that were first made in 2017 and that is the definition of a claim. So whether these claims are related, whether the trustees claims are related claims to the claims made in 2016, is irrelevant under the express terms of this contract because this contract does not permit any claim to be deemed made prior to the inception of this contract by its express terms. Now I understand the confusion here and I understand where the district court went wrong on this. And that is, this is a claims made policies and literally, I won't say literally because I'm not 100% sure, but most of the cases that are cited in the briefs here are claims made policies when they're talking about these related provisions. Look at the language that the courts are evaluating in those cases and compare them to the language of 7B. Let me just pick one. Continental casually bewent. It's a case regarding the relatedness, right? The language that the court is looking at there is any claim or claim arising out of the same or related wrongful act shall be considered first made during the policy term in which the earliest claim arising out of such wrongful acts was made. That language does not appear in our contract. And the standard under Florida law is that ensuring provisions like section 7B, which is a provision to expand coverage, must be interpreted broadly and in favor of coverage. And to the extent there is any language that the insurers claim limit coverage has to be construed strictly against the insurer and narrowly. It's frankly impossible to read this going through a detailed analysis of how this provision works, what the words on the page say, and conclude that to the extent this could ever be used as an exclusion, it's ambiguous. It simply does not, this policy does not answer the questions. How can anything be deemed prior to the policy period? It cannot under the express terms of this contract. What those provisions are called are claim aggregation provisions. They exist in claims made policies because that's what insurers want the policies to do. This provision doesn't have it. And if you need another reason why, look at the defendant's arguments here in response to our initial brief. They say you have to read the 2016 7B in connection with the 2017 policy. That argument is, if nothing else, is just an admission that you can't read the 2017 policies alone and reach the conclusion that they're reaching. That they need help from the 2016 policy. It's the only way they can get there. But that argument in and of itself is prohibited, is precluded, cannot be made under the recent precedent from this circuit in Shiloh. This court held clearly that each renewal insurance policy is an independent contract and must be interpreted and applied without reference to any other policy. Defendants' arguments make our point. And with that, unless you have other questions, I'll reserve. All right. Thank you, Mr. Swagman. Mr. Lange for Appellee National Union. Good afternoon. May it please the court. I'm Joseph Lange from Carlton Fields, representing National Union Fire Insurance Company. With me at council table is Jolene Griffiths from Bailey Cavallari for RSUI Indemnity Company. This appeal presents two main questions. The district court got both of them correct. The R&R that was adopted by the district court correctly determined that the 2017 policy expressly circumscribes the scope of coverage to preclude coverage for a claim that was deemed first made in an earlier policy period. That determination precludes the trust from seeking additional coverage for related claims under the 2017 policies after the insurers already paid $60 million under the 2016 policies and exhausted limits under those policies. In this regard, the district court also correctly ruled that the claims against the Koblentz directors in the trust severed actions are related to the claims made in 2016 in the initial Wasik complaint. That determination is plainly dictated by Florida law and the terms of the 2017 policy, but it is notable that the Koblentz director's own actions are consistent with that determination, too. The Koblentz directors themselves sought and accepted coverage under the 2016 policies, and so their arguments here are completely inconsistent with that. Who drafted the language of the policy? Your clients drafted the policy, right? That is correct. And so if it's ambiguous, isn't coverage construed in favor of the insured? The policy is not ambiguous, Your Honor, and I'll walk through that. Ambiguities would be construed in favor of insureds if there was an ambiguity, but here there's no ambiguity whatsoever. Starting with the language Your Honor quoted at the outset of my friend's argument, Section 7B expressly says that claims actually made or deemed first made prior to the inception date of the policy are not covered under this policy. You heard Nary a word about that language from my friend. They are trying to avoid that language in the second paragraph, the second main paragraph of 7B. I would also point out that that language, which is what the district court embraced, is underscored by another sentence in that very same paragraph, which the district court did not embrace, but it simply confirms the meaning of that sentence I just read. And if you look at the penultimate clause in that last paragraph of 7B, it also says that claims or pre-claim inquiries arising out of any circumstances of which notice has been given under any director's and officer's liability insurance policy enforced prior to the inception date of this policy are not covered under this policy. Those two clauses together say about the same thing, and they both reinforce the view that any claim that relates back to a claim made under a prior policy is not covered under this policy. It could not be more expressed than that. There is no ambiguity. My friend just simply doesn't want to look at those sentences and would rather focus on the first part of that paragraph, and the first part of that paragraph is a standard related claims provision. It's the exact same related claims provision that's in the 2016 policy, and that is saying that claims that, going forward, are related back to a claim first made in a policy period all get pulled back into that policy period. As the Gidney case from the Third District Court of Appeal explains, there are two purposes of those types of related claims provision. The first benefits the insurer by pulling all related claims into one policy period for purposes of liability, but the second benefits insurers, and that purpose is that by being able to limit your exposure to one claim into a single policy period, you're able to get insurance in the future because if future policies were going to have to cover claims that had already been made under prior policies, you would not be able to get insured going forward. So there's a dual benefit to these related claims provisions, and the 2016 policy has the same related claims provision that the 2017 policy has, and they both pull back into their policy all future claims, all subsequent claims that are related to claims first made in that policy period, and here the claims were first made in the 2016 policy, and that's why the insurance companies paid $60 million for claims well beyond just those in 2016 for all the related claims going forward. They were paid out of the 2016 proceeds, and because they were pulled back into that policy period. Real quick, I'll talk about the district court's related claims determination. I think it's pretty clear, though, that it's a common scheme throughout all of the complaints, the WASC complaints and the severed complaints all talk about the same scheme. Every paragraph of the fiduciary duty claims in the severed amended complaint talk about these directors being beholden to Mariano, and that's the last complaint. That's the severed amended complaint, and they're still talking about being beholden to Mariano. The introductory paragraphs in that severed complaint talk about the ongoing scheme. It's the same scheme from throughout, and notably, some of the directors that did the exact same things as their Koblentz directors were paid out of the 2016 policy. Their claims were settled under the 2016 policy. That's a virtual admission that these are related claims back to 2016, because if they weren't, they shouldn't be settling and getting paid for those 2017 acts out of the 2016 policy. Let me just make sure there was some mention of the Shiloh case, which is clearly distinguishable. We will stand on the language of the 2017 policy. I've already explained that. The 2016 policy clearly reinforces that the district court made the right decision, but we don't need to go outside the 2017 policy. I read to you the exact language that makes it clear that these claims are not covered, that they're not within the scope of coverage, but Shiloh, in any event, was a case about windstorm coverage, where the actual plain language of the policy didn't say anything about the exclusion that was at issue. It was a mistake. It got left out, and so there was a lot of extrinsic evidence about conversations that may have been had. That never made it into the face of the policy, and Shiloh said, we're not going to go look at extrinsic evidence, even if there's a mistake in the way the policy was drafted. Totally distinguishable facts from this, I mean, the language is right on the face of the policy that we're relying on. That's my basic position. We embrace the district court's R&R and the district court's adoption of that R&R. Happy to answer any other questions. The reason why this case is difficult for us is, in this case, although we define related claims broadly, here, the claims are against different insurers who were not involved with the actions in the first claim, and so we can't find any published cases that give us any guidance when you have different insurers who were not involved with the actions in the first claim. I would suggest that the Health First case, to find all the facts that really underscore this, you should go to the middle district opinion in the Health First case, which lays out that, remember, that spans multiple years. 13 years, I think, is the period at issue there, and the later lawsuits not only came in different lawsuits. I would say this is all one lawsuit here. Not only came in different lawsuits, but actually named different insureds as defendants in those later lawsuits, and all of those were considered related claims. So you have different lawsuits naming different insureds, so you do have different defendants, and all of that got pulled back in as a related claim to the initial lawsuit, and the higher level of factual detail is found in the middle district's opinion, but this court affirmed. All right. A heavy argument. Thank you, Mr. Lane. Thank you. We would ask that you affirm. Okay. And Ms. Horan, you're here for RSUI? Do you want me to ask a question? I'm Jolene Griffith, Your Honor. I'm here for RSUI.     Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you. Mr. Swigman, you have reserved some time for rebuttal. Thank you, Your Honor. So I'll try to make just a few quick points in the time I have remaining. First, the language in 7B that my friend refers to is claims arising out of circumstances or pre-claim inquiries, of which notice has been given under the director's and officer's liability insurance enforced prior to the inception of this policy. That is a Notice of Circumstance provision. A Notice of Circumstance provision has a lot of deets, not an issue here, it has nothing to do with this case. It has a... Those provisions require that facts have to have occurred, wrongful acts had occurred, no claim was made, but a report was done to say, hey, put you guys on notice. This claim, if I ever get sued on this circumstance, it goes back into this policy year. That's not what happened here. It has nothing to do with this. So that's just categorically wrong. Second, my friend made a comment about the 2017 directors seeking and accepting coverage under the 2016 policies. False. That is counter to the record, that did not happen. They sought coverage from both the 2016 and 2017 policies. The carriers provided a defense under the 2016 policies, but under a reservation of rights as to coverage. They did not provide coverage to these directors. That's significant, because there's nothing about... There's no... Which is governed strictly by the contract. There's nothing strange about defense having to be provided under two policy years. If they could conceivably, any conceivable argument that they would be required to defend under the 2016 policy, they have to defend. Same issue under the 2017 policy, but they chose to limit their liability or attempt to by saying, nope, it's all under 2016, you have no choice. And then finally, briefly, with respect to the relatedness points that your honor seems to be interested in, I just wanted to say, what the court did here, below, was to ignore all of the relatedness factors here, all of them, except for the modus operandi, the common scheme or plan. And then he defined the common scheme or plan to be Mariano's greed. Mariano's greed, that's the common scheme or plan. That's not a scheme. A scheme is how you get... The scheme is not to loot the company, that's the goal. The scheme is, how do I do it? Mariano did it in many varied and different ways. He tried to get money out of the company through a dividend recapitalization transaction that the shareholder shut down. He tried to do it through related party transactions through some of his friends. This all happened years prior to 2017. In 2017, what happened is, Mariano came up with new schemes. He needed a new scheme. He tried to get money out of it through convincing the board, forcing the board to send money to his insurance company, GIC. He wanted to send some money to his friend, Pesh, through a severance agreement, who had helped him steal money in all these other schemes he was doing. But the bottom line is, these are different schemes, perpetrated by different insurers, during different time periods, concerning different transactions. It cannot possibly be causally or logically connected to what happened in 2017 regarding the specific transactions, the specific wrongful acts, and the specific demands for monetary recovery that were made in 2017. Those are not related. Those claims are not related to the previous actions taken by Mariano, and corporate greed is not a scheme. And with that, Your Honors, unless you have any questions, we respectfully submit that you should reverse and render in favor of the plaintiff on the judgment, I mean on coverage. Thank you. All right. Thank you, Counsel. Well, court is adjourned.